Ewing v. 1645 W. Farragut LLC. Mr. Novak. Good morning, Your Honors, and may it please the Court. We submit that this appeal starts and should end with a very basic causation principle. Sometimes it's called loss causation or approximate cause or just causation. Under that principle, damages for fraud cannot be awarded if the damages would have been suffered even if the defendant's representations were true. The rule is well established under Illinois and Seventh Circuit case law, and we cited five cases demonstrating the point. Here, the only fraud damage is sought by plaintiffs, and the only fraud damages on which the trial court instructed the jury were those that allegedly resulted from plaintiffs not acquiring the subject house. Yet, and here's the point, because plaintiffs themselves voluntarily elected to terminate the contract under the mortgage contingency clause, plaintiffs would not have acquired the house even if plaintiff's defendant's representations as to the condition of the That sounds like a but-for causation argument to me. It's really not, Your Honor. Even if there's but-for causation, plaintiffs wouldn't have gotten into the contract, but for the misrepresentations, loss causation goes a step further and says, well, would the alleged damages have been suffered even if the representations were true? In all those cases, we cited five cases. Mr. Novak, forgive me. The plaintiffs presented evidence that they never could have gotten a mortgage approval by the date in the contract because no company would give a mortgage on a gutted property. Why wouldn't that be sufficient, right there, to show that Farragut's actions caused the problem, hence it caused the resulting damages? I mean, it all relates back to the permit issues and the stop work order. Not anything, it would seem, that the plaintiffs did or failed to do. That's my problem. Your Honor, that is exactly the argument the plaintiffs are making, but it's argument, and it rewrites the evidence. They cite to Ewing's testimony to say that they couldn't have got a mortgage commitment, but look at his testimony. His testimony was that he heard from mortgage brokers that you cannot get a mortgage, not a mortgage commitment. He said you cannot get a mortgage if the property is not, if the home is not ready. He didn't say that you can't get a mortgage commitment. We all know. Come on. Every day, mortgages are given, mortgage commitments, I should say, are given on uncompleted houses and before the purchaser even gets title. It's a step to getting a mortgage. It's not the mortgage itself. And the very next page, the very next page of the transcript, at 230, docket 310, 239, 12 to 15, then continuing on line 23 on to the next page, 240, here's the reason that Ewing testified under oath. In fact, in questioning by his own counsel at the trial, here's what he told the jury. Question. Did any of those lenders offer any type of a mortgage to you? Answer. One lender, Mr. Hoppe at Stearns Lending, said that he could proceed with the mortgage application in just my name. And was Mr. Hoppe willing to provide a mortgage commitment to you in both of your names? In both of your names? Answer, no. Did you proceed with that application? No, we did not. Why not? Our understanding was that the contract required the mortgage commitment to be provided to both of us. So Mr. Ewing and Mr. Gomez stopped the mortgage commitment issue right in its tracks, wouldn't even put in an application for the loan. It is purely hypothetical, Your Honor, if I may, purely hypothetical whether there would or wouldn't have been even a mortgage commitment issued because it wasn't applied for. That's what happened. Why didn't your client get a mortgage? Pardon? Why didn't your client get the mortgage? Our client directed the plaintiffs to Mr. Hoppe. And why didn't Mr. Hoppe give them a mortgage? Because they didn't put in an application for it because he said the only way we're going to proceed with this loan is if Mr. Ewing, only you, we don't want Mr. Gomez on the document. And Mr. Ewing maybe understandably said, I'm not signing up for this without my partner being liable as well. Under the terms of the contract, was that enough for your client to just point them in the direction of a mortgage broker? Because I thought the contract allowed if Mr. Ewing and Mr. Gomez could not get a contract, then it was up to your, or a mortgage, then it was up to your client to get them a mortgage. He had a certain period of time in which to get them a mortgage, and he did not do that either. There was no mortgage. He had no obligation to do it under the contract. Paragraph two of the contract says if the plaintiffs cannot get a mortgage, at Mr. I'm sorry, at the defendant's sole option, sole option, can elect to try to get it. And if he gets it, that's good. If not, the contract is over. I don't recognize this as a loss causation argument. It sounds like an argument about who breached and has nothing to do with the fraud. The fraud in this case was the permitting deceit by your client. That's well established, no question about that, and that's not even being litigated on appeal or re-litigated on appeal. So the fraud damages are those losses that flowed from the permitting deceit by your client. The contract, breach of contract was a separate claim, although the damages instruction, as I understand it, on both the contract claim and the fraud claim were identical. And Judge, respectfully, the verdict form that the jury signed found no additional damages, zero additional damages on breach of contract. The breach of contract damages were the earnest money, and they checked the box, no additional damages for breach of contract. Right, I understand that. The whole argument you're making here about who failed to get the mortgage and why is totally related to the breach of contract claim. It has nothing to do with the fraud claim. The fraud claim is about the permitting deceit. First of all, we're not claiming on this appeal that the plaintiffs breached the contract. There was no- I understand you're not re-litigating that, that's what I just said. Either as a fraud concept or as a breach of contract concept. Yes, but the point is, Judge, maybe I just was completely unclear and I apologize. Fraud damages were awarded, no contract damages beyond the instructed damages. Understood. So the question is, can those fraud damages, not breach of contract damages, can those all stem, and the plaintiff's brief admits that all the damages are triggered by the fact that they didn't get the house. Every one of them comes from not getting the house. And the lost causation argument is, but they wouldn't have gotten the house anyway because they couldn't get a mortgage, and by the way, they could have continued with the contract without the mortgage commitment, but they elected to terminate the contract. But that's a jury argument. I mean, there's evidence in the record. There's clearly evidence in the record from Mr. Ewing that he testified that he met and had meetings with mortgage brokers, and at these meetings, he was told that he couldn't get a mortgage commitment because the home wasn't ready to be lived in, and they couldn't get a mortgage until the home was ready. That's it. I mean, the jury believed that. But it doesn't matter why he couldn't get the home. Just because the home wasn't completed, that doesn't prevent somebody from getting a mortgage commitment. Well, according to Mr. Ewing, it did. Right. That's what he testified to. I understand. I get it. That's okay. You can argue. He did not testify to that. He said, I was told by three brokers that you can't get a mortgage, not a mortgage commitment. There's no testimony about a mortgage commitment, and that's the only thing that triggers that clause. He said he was told by three brokers he couldn't get a mortgage until the home was ready. Didn't say because lack of permitting or because of fraud, just the fact that the house wasn't done. You can't get a mortgage. That probably makes sense. You can't get a mortgage. You can get a mortgage commitment. Everybody gets mortgage commitments in advance, and then they're subject to conditions, et cetera, et cetera. But why was the house not done? Because of the permitting deceit. Permitting is a permitting problem, but loss causation assumes. Not problem. Permitting deceit. This is a deceit case, a fraud case. Your client concealed the permitting, the lack of permitting, and the city wasn't going to allow any further construction until that issue was addressed. And if the plaintiffs had not terminated the contract, they could have perhaps sought and But once they terminated the contract, that meant they weren't ever going to get the house. And they didn't get the mortgage, not because of the condition. They didn't make a loan application, had nothing to do with the condition. It was because of who had to sign. And let me assume for a moment that the reason they didn't get the mortgage and the reason they gave the termination notice was because of fraud. Let's say that is. The RoboServe case, this court's case, cited in both parties' briefs, says that if a party is induced to sign a contract under fraud, the party has an option, and only two options. It can affirm the contract and seek all these damages, benefit of the bargain damages, etc. Or it can rescind the contract, in which case it's limited to monies paid in performance of the contract. That's the earnest money, and only the earnest money. That's what the RoboServe case, that's Illinois law. The problem with that argument is that you approved the instructions, the jury instructions on damages. And this argument about the measure of damages that you're making on appeal was not preserved below. Oh, we made a causation argument. I'm not talking about the causation argument. I'm talking about the measure of damages argument. But that's not... That's a measure... The argument you're making now is a measure of damages argument about how to measure the fraud damages, either benefit of the bargain or out-of-pocket. And that's a complicated question under Illinois law. There's all kinds of restatement rules that apply to that evaluation, and there's no possible way a district court judge is going to be held responsible by an appellate court for the kind of instructional error that you're now alleging on plain error review when you approved the instructions and, in fact, requested them. Judge, trial counsel approved an instruction for damages that included a causation element. Mr. Novak... Do you think it would help us if we talked about the emotional distress damages for a minute? Because time is moving and Farragut has complained that the court failed to instruct the jury on what the plaintiffs needed to prove to establish the emotional distress damages. But Farragut asked the court to remove that information from the instruction. So I've been trying to figure out how that would not be a waiver of that issue. Farragut did... Respectfully, Farragut did not say remove that. Farragut said we object to any instruction whatsoever. There should be no instruction on emotional damages. The plaintiff did not come close to the severe standard of care... I'm sorry, standard of proof for emotional distress damages. And then said, but if you're going to put it in the instructions, then just put in emotional distress. But the fact of the matter is the standard wasn't met. No matter what that instruction was, the standard of proof, and we cited the cases that say it, only if the distress inflicted is so severe that no reasonable person could have been expected to endure it. There's no evidence like that in the record. And they got at least $210,000 of emotional distress damages on a failed sale of a house where they kept their money, they didn't pay a penny beyond the earnest money, and are getting $800,000 of damages. That's, in the words of the court, monstrously excessive under the circumstances. This is... Well, speaking of keeping the money or getting the money, you know, Farragut complained about that five-year time frame for some of the damage calculations. But Farragut held on to the earnest money for that period of time. So even if Carrier, you know, even if he reasonably believed he was entitled to keep the earnest money as liquidated damages, why would Farragut not be liable for damages for every minute of delay after the court ruled that the liquidated damages provision was an unlawful penalty? Well, that's a question of loss of the use of the money, and the law provides the remedy for that, which is prejudgment interest. Prejudgment interest was not requested or awarded, could have been, and under the law, that's what accounts for not having the money. Meanwhile, everything that, you know, that they had seemed to be tied up. So, Judge, may I, I'm three minutes into my reserve time, may I reserve the last four minutes for rebuttal? Yes, you may. Thank you. Thank you. Mr. Ewing. Good morning, Your Honors. May it please the Court, Randall Ewing for the Plaintiffs Cross Appellants and Appellees. I'd like to point out a couple of factual issues that I believe my colleague misstated. It appears my colleague was confusing the difference between a mortgage preapproval letter and an actual mortgage commitment. This was all explained by Mr. Hoppe's testimony at trial. A mortgage commitment is a firm commitment to lend that says, you know, everything has been satisfied, we're ready to give you your money. For a particular property. Correct. Not just, the mortgage letter you're describing is you go to the bank and you tell them, I make $200,000 a year, whatever it is, and they give you a letter that says, we will give you a mortgage in the amount of $500,000, and then when you go meet with a real estate agent, you show him or her that letter, and they show you properties that they think can fit your budget. That's a mortgage letter that you're talking about, right? That's right. And that is different from an actual mortgage commitment, which is usually issued a couple days before closing once it's gone through underwriting, as Mr. Hoppe explained. It was also an undisputed fact to address Judge Rogner's question about whether a mortgage could have been obtained no matter what. That was an undisputed fact found by the district court and enforced under Rule 56G. Mr. Hoppe also testified at trial that had he known the house was gutted, he would not have been able to issue a mortgage commitment during the time frame required. As to causation, there's two elements of causation. Was the conduct a material and substantial factor, and was it legally foreseeable? That second element is sometimes called legal risk. They have never challenged the second element. They've only ever challenged the first element. And it fails for two reasons. First, the letter in October 2016 was not accepted. They did not accept the letter. They said it was not invalid, we are terminating the contract, and we're keeping all your money. So what the defendant is trying to do is now, five years later, after being found guilty by a jury, is trying to go back in time and say, actually, that letter you wrote in October 2016, I'd like to abide by that. Right. And doesn't all that simply relate to the question of who breached? Yes. Yes. Rather than what the loss from the fraud is and how it's measured, which are separate questions. Well, I actually, I do agree with the general premise that if the misrepresentations had been true, and we would have walked away from the house anyway, that there would be no damages based on acquiring the house. As a legal matter, that's correct. The problem is that's not what happened in this case. The mortgage could not have been obtained no matter what, so that satisfies causation. In addition, even if that October letter were relevant in any sense, there was testimony that it was defendant's fraud that caused that letter. And the law is quite clear whether you call it an intervening cause, a superseding cause, a third-party cause. If the defendant is trying to point to some other event and say that event breaks the chain of causation of damages, then that fails if the defendant actually influenced that event. So the plaintiff sending the letter in October 2016 does not reflect the but-for world. At that point, the defendant had refused to enclose the balcony, which the court found was fraudulent and a breach of contract. Defendant was imposing damages and trying to claim their earnest money for delays that were being caused by completely unrelated parties. That was unlawful. So October 2016 does not reflect the world if the misrepresentations had been true. I'd like to go back into the size of the emotional damages, please, if I might. What is the best evidence supporting the size of those damages? Because I fully understand that, you know, you were prevented from buying a house for a year, and it was the defendant's false accusations about the cause of the delays that led to some relationship problems. Is there anything else that justifies that amount that you can elucidate on? Well, one of the biggest pieces of evidence which the district court relied on when having firsthand observation of the trial affirming this award, as the district court noted, one of the biggest pieces of evidence was Mr. Carrier's testimony. As we submit in the brief, and I believe as the district court alluded to, the testimony was not favorable to Mr. Carrier at all. He was impeached multiple times. He said things that were directly contrary to emails that were shown to the jury, and the district court noted that the jury was able to observe that conduct and then determine, it's essentially gaslighting, and then determine what would it, you know, what would the emotional distress be of having your life savings held up by someone who's consistently gaslighting for years? Was the jury given any instruction at all as to how they should consider emotional distress? Well, no. We proposed one. And it was the defendant who, as I look at the judge's factors, is that you may consider the following factors of damages, fourth, emotional distress. That's it. I mean, I don't know what a jury's supposed to do with that without any more information, and it seems like in this case, they decided to do with it in your favor. Yes. There was additional language in there, what we had proposed, that matched the model jury instructions about the different elements that go into it, and the defendant said we would like that additional language removed. I mean, I think the defendant's argument on what's required for emotional distress damages in this case is correct, but you can't invite error and then complain about it on appeal, I think is your argument. Exactly. And it's not even plain error. Right. It's wait. You can't invite error. Yeah, there's a difference between forfeiture and waiver. Waiver forecloses appellate review. If you just fail to object, plain error. If you actually advocate for the position, appellate review is foreclosed entirely. Now they do have an argument that they did object that the basic standard to award any emotional distress damages was not met, and they keep pointing to this of a severity that no reasonable man can endure. But that's just not the standard in Illinois when you have torts that have other economic damages. They point to a couple intermediate appellate court cases from 20 years ago. The Illinois Supreme Court, as we noted in the brief, spoke to this in 2017 in the Cochran v. Securitas Security Services case, and it said plaintiff's claims here fall into the category of cases in which the tort has already been committed against the plaintiff's, and they assert emotional distress damages as an element of damages for that tort. And if you read the case, it's a long discussion about when you have to meet the severity standard and when you do not have to meet the severity standard. And when you have a tort with other economic damages, there is no severity standard, certainly not that no reasonable man can endure. That's just for standalone emotional distress damages? I'm sorry, your honor? That's just for standalone emotional distress damages where there's not underlying economic damage? Yes, your honor. If there's either a claim for intentional inflection of emotional distress or if you have some other tort that has no economic damages, then you have to meet that severity in order for the claim to proceed. Mr. Ewing, on the admission of the Fruit Cups comment, the court admitted it for punitive damages, but later ruled that punitive damages were not available. And that language, of course, came to light during the litigation, not during the party's dealings with one another. What would the relevance of that be, do you think, to the fraud and breach of contract claims? Well, your honor, punitive damages are appropriate if the defendant commits a tort with malice, ill will, spite, or an intentional disregard of the plaintiff's rights, and the relevance of that email was it showed malice or ill will towards plaintiffs at the time he was committing the fraud. The defendant keeps claiming that it's completely unrelated, has nothing to do with the fraud. The email he was forwarding to his counsel was an email to us that contained fraudulent statements about his ability to work on the house. The next time we heard from either Mr. Carrier or his attorney following the Fruit Cups email was a letter saying they could work on the house, which was wrong. The attorney later testified he wasn't actually aware of the permitting issues at the time. So this Fruit Cups, this belief, denigration of plaintiffs in Mr. Carrier's mind was in his mind at the exact same time that he was committing the fraud, and doubling down and tripling down on the fraud over and over again. So that's why we believe it's relevant to punitive damages. We also believe it's relevant to emotional distress damages because we discovered the email in May 2018, and at that point, our life was still in Mr. Carrier's hands. So the defendant keeps trying to paint this case as a case that stopped and ended, started in April 2016 and ended in October 2016. It wasn't for plaintiffs. It might have been for a defendant when they walked away with the house and the money, but for the plaintiffs, in 2018, when they discovered that Mr. Carrier viewed them as quote-unquote Fruit Cups, Mr. Carrier was still largely in control of their life and ability to buy another house, and that caused additional emotional distress. Can you attempt to isolate what component of the damages award the jury probably allocated to emotional distress damages because, I mean, it wasn't speculative in a certain sense because there were not line-item breakouts of each component of the damages other than the earnest money that had already been awarded as a matter of law by the court. So there's additional damages over and above the earnest money in the amount of $787,500, and you were asking for specific amounts in the other categories of damages, correct? $200,000 for the cost to purchase a new home, the increased cost to purchase a new home? Yes, that's the maximum amount that was put into evidence on that category of damages. And then how much to rent a similar house for the five years that you were with them? It would have been $350,000, $5,000 a month for 60 months. Okay, and then $25,000 in actual rent paid? It was one, the instruction was one or the other. One or the other, okay. So we don't really know what the jury did there because that's either a big-ticket item or a small-ticket item in this total. I agree, but I believe based on the evidence that was introduced into the jury, I'll acknowledge that I think there had to be a minimum of approximately $225,000 emotional distress because there was not evidence of economic damages above and beyond, you know, around $552,000. Okay, thank you. Mr. Ewing, Farragut is bankrupt, correct? That's my understanding. They keep being able to, well, yes, that's mine. I'm sorry. Let me correct that. I don't believe they're bankrupt. I certainly haven't been notified of any bankrupt filings, but I believe it has no assets. Insolvent. Right. Okay, so if we agree with you, will this just be a, what kind of victory will this be? I mean, will it be, I mean, right now? Two things, Your Honor. First, we have an appeal. We twice tried to amend the complaint to add Mr. Carrier to the case after discovering his fraud, which included discovery of the abuse of the discovery process itself. If Mr. Carrier is added to this case, he would be issue precluded. He personally made the fraudulent misrepresentations, and under Illinois law, whether you're an officer of the corporation or not, if you personally participate in the fraud, you're personally liable. But on the cross-appeal, I mean, what exactly was the court's abuse of discretion in declining to allow that late amendment? I mean, I understand that this could have gone the other way, but what we would have to find is that no reasonable person would have ruled this way, and I'm not sure that I can see that level of a problem. The plaintiffs ran out the discovery clock, and then, you know, you asked to add the defendants to the case. So where would the abuse of discretion be here? Well, I believe the law provides that it is an abuse of discretion to entirely fail to consider a relevant factor that's relevant under the analysis, and I believe the district court abused its discretion by not really considering at all the fact that Mr. Carrier had abused discovery and caused the very same prejudice that it was complaining of. There was no analysis of his discovery responses. There was really no addressing that at all other than to then say, well, you waited three and a half months after that, even though it found that there was no, you know, it didn't make a, the district court did not make a finding of undue delay. So I believe it was an abuse of discretion. I don't think this court or any court should reward parties who abuse the discovery process to hide claims. Why can't you just proceed under Rule 69? We issued an earlier opinion in the related case in front of a district judge sending this back to Judge Coleman and said, look, if the judgment against the LLC becomes final, plaintiffs could enforce that judgment against any alter ego and collection proceedings under Federal Rule 69. Wouldn't that work here? Well, we did try to do that following that opinion in the district court. She just held everything, right? She just stayed at Penny. No, in this case. Right. And I thought she held everything. She doesn't have jurisdiction of this case right now. We do. So everything is on hold in the district court as I understand it. I need to think about that. That's a good point. I'm not sure if the district court is divested of jurisdiction of supplementary collection proceedings, but we did move following that opinion to pierce the bail and supplementary. OK, I got it. OK, I got it. And the district court, following several Seventh Circuit opinions, have said that under Illinois law you cannot pierce the bail and supplementary proceedings. Illinois says you have to file another case. We did. I believe both defendant and plaintiffs were in agreement on that during argument in the initial appeal. So the law in Illinois appears to be quite convincingly and stated multiple times by this court that you cannot pierce the bail and supplementary proceedings. You have to file a second case. But that orders neither here nor there. Now, in addition, piercing the bail obviously has a higher standard of art. It requires discovery. You have to meet various factors, some of which could be difficult to meet depending on the facts. Here it's a lot more efficient and easier for plaintiffs at least, since Mr. Carrier personally committed the fraud, to just find him liable for fraud and not go through the complicated bail piercing process. So that's why we're seeking to add him to the claim and find him liable for fraud. The second way I believe the district court abused its discretion in deciding the first motion for leave to amend is it did not consider the claims independently as to whether new discovery actually was required. It just said, well, there's new discovery required, so I'm going to deny it. And the defendant points to that and says, well, plaintiffs should have filed separate motions. According to the defendant, I guess we should have filed one motion against D'April, one motion against Eric Carrier for fraud, one motion against Eric Carrier for bail piercing, and then presumably the defendant would have agreed that whether discovery was required should have been analyzed independently because there was no discovery required for the fraud claim. All of that discovery had already taken place to the extent the defendant chose not to. It was on notice of it. The district court should have analyzed whether adding the fraud claim by itself would have required additional discovery. I think it's an abuse of discretion to throw the baby out with the bathwater approach where you say, well, one of three proposed claims requires new discovery, so I'm just going to deny them all. I don't believe that's the way that those motions should have been analyzed, and I think that was an abuse of discretion. I also think it was an abuse of discretion for the post-judgment motion for leave to amend as well because we followed the procedure that was set out in Nelson v. Adams. We requested Rule 59 relief to the extent that was required in the very first sentence of the motion. There's no prejudice that could accrue to defendant at this point, and most critically, the Seventh Circuit and the Supreme Court have repeatedly held that claim preclusion has a mutuality requirement. Seventh Circuit 2010-2020 Burton v. Goch. If a party cannot have been bound itself, the mutuality forbids that party from invoking claim preclusion. Mr. Carrier invoked claim preclusion in the second case. He should be bound in this case. All right, thank you very much. Mr. Novak. Two points on emotional distress. Number one, we did not object to the standard being put in the emotional distress instruction. The only thing we asked not to be in there was the reference to pain and suffering. That was what they wanted in. We said don't put pain and suffering in. The next thing we know, there's an instruction that has nothing but emotional distress. Well, you saw that before the judge read it, didn't you? I mean, it wasn't like you were sitting at the table, and she was instructing the jury, and you were surprised. But, Your Honor, we argued there should be no instruction at all on emotional distress. I know, and you lost that. And then the judge said, well, let me tell the jury what this means, and you said no. And so the jury's sitting in the box and have no idea what to do with this. I don't believe that happened. Okay, well, how do you think it happened? Trial counsel just said don't put in there words like pain and suffering. That was what was being argued about, not the standard. And I would say— Well, then, did the trial counsel submit a proposed instruction on the standard? I mean, it's very weird to have a jury instructed on emotional distress with nothing else. They have no idea when they get back into the jury room what that means. Judge, neither side proposed that instruction. Well, if I was the plaintiff, I probably wouldn't want it. Didn't it work out for their favor? If you're asking who invited air, three parties invited air here, I guess. But the plaintiffs won at trial. So it's your problem, not theirs. Without evidence. Without evidence, it meets the standard. And that standard does apply to all cases. And we cited in the brief the Doe case. And the Doe case applied that standard to accounts for fraud and consumer fraud, the severity standard. Judge Chang in the Northern District applied it in a case that had both fraud and consumer fraud. But was any of this argued in the district court during the instructions conference? Was this argument made during the instructions conference? As I understand it, the only objection that was made is that you didn't want the emotional distress line item at all. That emotional distress damages should not be available at all. Not what the standard should be. Well, Judge, if this is in plain air, I don't find anything that was argued. Looking in hindsight. Right. All these instructional error claims have been forfeited, certainly, and perhaps waived. I don't think so. This is plain air. An error that allows a $225,000 emotional distress line is no evidence. That goes to substantial rights. The first question is whether the error is plain and obvious. In other words, whether the judge had a sua sponte obligation to overrule the party's arguments and notice the problem and correct it herself. I'm hearing from three judges that that was what should have been done. It was plain. It was obvious. How can you possibly give instruction? Which judges are you talking about? Well, I'm sorry. I don't mean to put words in your meaning. But I've heard, how could we not object to that? Well, how could the judge not see that it was an error? She should have seen it. It was plain air. Oh, my goodness. Instructional errors almost never qualify for plain air review. That standard is extremely steep, and it has to be so obvious that no reasonable judge would have failed to correct it. Judge, we asked for a motion in limine. It was overruled to keep those references to fruit cups out of this case. That tainted the entire case. It's a different issue, but I'm saying that requires a new trial. The only defense is that it went to punitive damages. The judge barred punitive damages. But then the judge said, I can instruct the jury and give them a limiting instruction, and your client's lawyer said no. That did not happen. I'm sorry, Your Honor. That did not happen. Are you saying? That instruction happened while punitive damages was still in the case. They offered an instruction that basically said, you heard about fruit cups. It goes to punitive damages. That's not a limiting instruction. That's the opposite. That's telling the jury, take that fruit cup and move it over to punitive damages. Of course that was objected to. There was no limiting instruction offered after, in the closing argument, after the judge barred punitive damages, and the plaintiff said the only relevance was punitive damages, says to the jury, in closing argument, they made this homophobic statement. That prejudiced us. That tainted the entire verdict. How could it not? How could it not in this day and age? There should be, at the very least, a new trial. And I am out of time. All right. Thank you very much. Our thanks to both counsel. Thank you for listening. The case is taken under advisement. Our next case this morning is United States v. Hollywood.